IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| STANLEY W. JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:07CV771-SRW |
| | ) | (WO) |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

Plaintiff Stanley W. Jackson brings this action pursuant to 42 U.S.C. § 405(g) and

§1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security

("Commissioner") denying his application for disability insurance benefits and supplemental

security income under the Social Security Act.  The parties have consented to entry of final

judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c).  Upon review of the

record and briefs submitted by the parties, the court concludes that the decision of the

Commissioner is due to be reversed.

**BACKGROUND**

On February 11, 2005, plaintiff filed an application for disability insurance benefits

and supplemental security income.  On January 24, 2007, after the claim was denied at the

initial administrative levels, an ALJ conducted an administrative hearing.  The ALJ rendered

a decision on March 28, 2007.  The ALJ concluded that plaintiff suffered from the severe

impairments of diabetes mellitus, diabetic neuropathy, and hypertension." (R. 14).  He found

that plaintiff's impairments, considered in combination, did not meet or equal the severity

of any of the impairments in the "listings." He further determined that plaintiff could no

longer perform his past relevant work, but retained the residual functional capacity to

perform jobs existing in significant numbers in the national economy.  Thus, the ALJ

concluded that the plaintiff was not disabled within the meaning of the Social Security Act.

On June 22, 2007, the Appeals Council denied plaintiff's request for review and,

accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The

court does not reweigh the evidence or substitute its judgment for that of the Commissioner.

Rather, the court examines the administrative decision and scrutinizes the record as a whole

to determine whether substantial evidence supports the ALJ's factual findings.  Davis v.

Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145

(11th Cir. 1991).  Substantial evidence consists of such "relevant evidence as a reasonable

person would accept as adequate to support a conclusion."  Cornelius, 936 F.2d at 1145.

Factual findings that are supported by substantial evidence must be upheld by the court.  The

ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity

attaches to the ALJ's determination of the proper legal standards to be applied.  Davis, 985

F.2d at 531.  If the court finds an error in the ALJ's application of the law, or if the ALJ fails

to provide the court with sufficient reasoning for determining that the proper legal analysis

has been conducted, the ALJ's decision must be reversed.  Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

The plaintiff challenges the Commissioner's decision, arguing that the ALJ's finding that plaintiff retains the residual functional capacity to perform light work is not supported by substantial evidence, and that the ALJ erred by relying on the medical-vocational guidelines ("the grids") in reaching his decision at Step 5 that plaintiff can perform other jobs existing in significant numbers in the national economy. The court concludes that the ALJ's Step 5 determination is not supported by substantial evidence.[1]

Once the plaintiff establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner to prove that the plaintiff can still perform other work existing in significant numbers in the national economy. Phillips v. Barnhart, 357 F.3d 1232, 1241 n. 10 (11th Cir. 2004)(citation omitted). The Commissioner may meet this burden, in some cases, by relying exclusively on the grids. In other cases, the ALJ must have testimony from a vocational expert to support a step 5 determination that other work within plaintiff's capabilities exists in significant numbers in the national economy.

"The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform. However, '[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." Id. at 1242 (emphasis in

---

[1] In view of this conclusion, the court does not reach plaintiff's remaining arguments. The court expects that the Commissioner will consider these arguments on remand.

original)(citations omitted).   An ALJ must first determine whether the claimant can perform

a full range -- *i.e.*, unlimited types of work -- at a particular exertional level, given the

claimant's exertional limitations.  Id.

> If the ALJ concludes that [the claimant] cannot perform a full range or
> unlimited types of work at the [particular exertional] level given her exertional
> limitations, then the ALJ must consult a vocational expert to determine
> whether there are sufficient jobs at the [particular exertional] level within the
> national economy that [the claimant] can perform.  If, however, the ALJ
> concludes that [the claimant] can perform a full range or unlimited types of
> work at the [particular exertional] level despite any exertional limitations, the
> ALJ next must determine to what extent [the claimant's] nonexertional
> limitations affect her ability to secure employment at the sedentary work level
> in the national economy.

*  *  *  *  *

> When determining to what extent [the claimant's] nonexertional limitations
> affect her ability to secure employment in the national economy, the test is
> slightly different.  When considering [the claimant's] nonexertional limitations,
> the ALJ need only determine whether [the claimant's] nonexertional
> impairments significantly limit her basic work skills.  [The Eleventh Circuit]
> has interpreted "significantly limit basic work skills" as limitations that
> prohibit a claimant from performing "a *wide* range" of work at a given work
> level.

*  *  *  *  *

> If the ALJ determines that [the claimant's] nonexertional limitations do not
> significantly limit her basic work skills at the [particular exertional] work
> level, then the ALJ may rely on the grids to determine if [the claimant] is
> disabled.  If, however, the ALJ determines that [the claimant's] nonexertional
> limitations significantly limit her basic work skills at the [particular exertional]
> work level,  then the ALJ must consult a vocational expert.

At the administrative hearing in this case, the ALJ heard testimony from a vocational

expert.  The testimony, in its entirety, was as follows:

> Q      You state your name?

4

A      Yes, sir.  My name is Barry Murphy.

Q      What is your profession?

A      I am a vocational rehabilitation counselor.

Q      And so have you heard the testimony?

A      Yes, sir.

Q      Have you reviewed the documents?

A      Yes, sir, I have.

Q      Are you familiar with Social Security law and regulation as pertaining
       to the vocational requirement in disability cases?

A      Yes, sir.

Q      [INAUDIBLE] Dictionary of Occupational Titles?

A      Yes, sir.

ALJ:   If you deviate from the DOT, please let me know
       [INAUDIBLE] any question as to his expertise?

ATTY:  No, sir.

ALJ:   [INAUDIBLE] qualify the doctor as an expert to [INAUDIBLE]
       will you tell Mrs. [Ludlam], Mr. Jackson for the record and
       myself the type of work that Mr. Jackson has performed?

VE:    Yes, sir.  It appears that all of his past work has been that of a
       laborer, a generic laborer and that work is heavy and unskilled.

ALJ:   All right, sir.  Assume that this individual, if he is in so much
       pain that which can be supported by objective evidence and
       [INAUDIBLE] with that pain and the pain level [INAUDIBLE]
       six, can he do his past work?

VE:    Well, Judge, I believe six probably would be in the moderately
       severe range.  He probably would not be able to sustain the

work.

ALJ:   All right.  Could he do other work of a light nature?  I'm not asking you to make that [d]ecision.  I'm just saying, *can an individual whose pain level is moderate could perform light work*?

VE:   *Yes, sir.  In the moderate range, if it's in the moderate range, yes, sir, I believe a person probably could step down and do lighter work.*

ALJ:   And that's under the assumption that he has at [INAUDIBLE] with his pain [INAUDIBLE] go ahead, Mrs. [Ludlam].

ATTY:  If the pain rose to an eight, would he be able to sustain work?

VE:   No, ma'am.  I believe eight would rise up to the level of severe and would not be able to do any work.

ATTY:  Okay.  If he had limitations with movement of his left hand and I believe he said he is left arm -- left-hand dominant, overhead lifting or limitations with that left arm, would that preclude or would there be other work in the light range?

VE:   If he is limited in his ability to reach, handle, grasp with the dominant [INAUDIBLE] I would have to say, no, ma'am, he would not be able to work.

ATTY:  Okay.  That's all I have, Your Honor.

(R. 336-38)(emphasis added).

The ALJ concluded that plaintiff's "ability to perform all or substantially all of the requirements of [light] work has been impeded by additional limitations[,]" specifically, "that he experiences moderate pain."  (R. 20).  He then found, based on the vocational expert's testimony, that "[t]he claimant's capacity for the full range of light work has not been

significantly compromised by his additional non-exertional limitations."  (Id.).[2]

As the Commissioner argues, "[a] non-exertional limitation will cause the Medical-Vocational Guidelines to be inapplicable only where the limitation is severe enough to prevent a wide range of gainful employment at a particular level."  (Commissioner's brief at p. 13 (citing Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985); SSR 96-4p)).  The problem in this case is that the question answered affirmatively by the vocational expert was, "[C]an an individual whose pain level is moderate . . . perform light work?"  (R. 337).  The VE's answer -- that a person experiencing pain in the moderate range "probably could step down and do lighter work" -- does not in any way quantify the range of light work that such a person could perform.  The VE does not state whether a person with moderate pain is able to perform a limited range of light work, a wide range of light work, or a full range of light work.[3]

The burden is on the Commissioner at Step 5.  He cannot rely on the grids to establish the existence of a significant number of jobs in the national economy unless the record contains substantial evidentiary support for the Commissioner's determination that plaintiff's

---

[2] See Commissioner's brief, Doc. # 20 at 14-15.  In his decision, the ALJ stated, "To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity for light work assuming that he experiences moderate pain.  The vocational expert testified that given all of these factors the individual would generally still be able to perform light work."  (R. 20).  The ALJ did not, in fact, ask this question.  If the ALJ were entitled to rely on the grids, the question would have been unnecessary.

[3] It may be a matter of common knowledge among ALJs and/or vocational experts that moderate pain does not substantially limit the range of light work that a person can perform.  Even if that is so, however, the ALJ is required to ensure that evidence in support of his findings is included in the administrative record.

moderate pain[4] does not preclude a wide range of employment at the light level.[5]  The VE's

testimony is not sufficiently precise to provide such substantial support.

## CONCLUSION

Upon review of the record as a whole, the court concludes that the decision of the

Commissioner is not supported by substantial evidence and, therefore, that it is due to be

reversed.[6]  A separate judgment will be entered.

DONE, this 10th day of November, 2008.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[4] The ALJ's decision and the Commissioner's brief treat plaintiff's moderate pain as a nonexertional limitation (see Commissioner's brief at p. 14;  ALJ decision at R. 20), and the court does likewise for purposes of this opinion.  However, "a symptom in itself is neither exertional nor nonexertional.  Rather, it is the nature of the functional limitations or restrictions caused by an impairment-related symptom that determines whether the impact of the symptom is exertional, nonexertional, or both. . . . The application of the medical-vocational rules . . . depends on the nature of the limitations and restrictions imposed by an individual's medically determinable physical or mental impairment(s), and any related symptoms." SSR 96-4p.  In his decision, the ALJ failed to adopt a specific functional limitation noted by plaintiff's doctor -- that plaintiff's symptoms occasionally interfere with attention and concentration -- instead finding that the doctor's opinion was consistent with "moderate pain."  (R. 18).

[5] See Phillips, *supra*, at 1243-44 ("[T]he ALJ must determine in the first instance whether such a restriction [limitation to jobs that do not involve multi-tasking] significantly limits Phillips's basic work skills; that is, whether there are a wide range of sedentary jobs that do not require multi-tasking.").

[6] The court here reverses on the basis of an analytical error, and does not intend to express any opinion regarding whether plaintiff meets the requirements for a finding of disability under the Social Security Act.